IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DENNIS JOSEPH,

    Plaintiff,

vs.

    Case No. C2-04-754
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Norah McCann King

CITY OF COLUMBUS,
    et al.,

    Defendants.

## OPINION AND ORDER

Plaintiff, Dennis Joseph, a former employee of the City of Columbus, brings this action pursuant to 42 U.S.C. § 1983, against the City of Columbus ("Columbus" or "City") and three of its employees, Mark Barbash, Director of the Department of Development, Jacquilla Bass, former Human Resources officer for the Department, and Deborah Hoffman, Administrator of the Building Services Division for the Department. The individual Defendants are named in both their official and individual capacities. This matter is before the Court for consideration of Defendants' Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. For the reasons that follow, Defendants' Motion for Summary Judgment is granted; Plaintiff's Motion for Partial Summary Judgment is denied.

## I.

Plaintiff was employed by the City of Columbus as a Development Land Use Specialist in the Department of Development. During his tenure as a Land Use Specialist, Plaintiff received letters and commendations for his job performance as well as regular pay raises.

Plaintiff asserts that, during his employment with the City, he was an outspoken critic of Deborah Hoffman, Administrator of the Building Services Division for the Department. Plaintiff alleges that he complained regarding Hoffman's management style and, according to hin, her poor attendance. Plaintiff asserts that on or about July 26, 2002, he engaged in a fifteen to twenty second conversation with Hoffman to express his disagreement with the manner in which the office cubicles were to be rearranged. (Joseph Aff., ¶¶ 9-11.)

On August 14, 2002, Plaintiff had a conversation with a co-worker, Richard Makley, about a number of subjects, including workplace violence. (Joseph Aff., ¶13; Makley Aff. ¶ 3.1.) Makley reported that during the conversation, Plaintiff stated "whose head should I beat in first, yours or Chris'"[1] and "mused" "how long does it take to get a gun at the Westerville Rd. gun shop; do they have to do the background check if they are not in the city; and which side should I start on." (Makley Aff., ¶ 4.) Makley personally interpreted the comment "which side should I start on" to mean that Plaintiff was contemplating as to which side of the building he would start shooting. (*Id.*) Plaintiff maintains that he "uttered no threats" during the conversation with Makley. (Joseph Aff., ¶ 14.)

Although during this conversation Makley responded to Plaintiff's comments as if they had been made in jest, Makley was not certain that Plaintiff was joking. (Makley Aff., at ¶ 5.) After the

---

[1] "Chris'" identity and occupation is not set forth in the record.

exchange, Makley searched for someone with whom he could discuss the matter because he was concerned. (*Id.*) Makley did not file a report or complaint under any policy of the City of Columbus relating to workplace violence or any other policy relating to physical altercations or menacing conduct. Makley went home without discussing the matter with anyone. (*Id.*)

The next day, August 15, 2002, Makley approached Brad Jones, a co-worker who knew Plaintiff well, and relayed to Jones his conversation with Plaintiff from the previous day. (Makley Aff., at ¶ 6.) Makley and Jones decided they should advise their supervisor, Deborah Hoffman.

Jones, Makley and Plaintiff all reported to Hoffman. (Hoffman Aff., ¶¶ 1, 2.) Jones recounted the conversation he had with Makley earlier in the day, and Makley confirmed the comments that Plaintiff had made to him. Hoffman called the Human Resources Office and the Director, Mark Barbash for guidance.[2] Director Barbash instructed Hoffman to call the police.

The police responded and separately interviewed Makley and Plaintiff. (Hoffman Aff., at ¶ 4.) Hoffman was present when the officers spoke with Plaintiff. Plaintiff's Union official, Richard Graham, advised Plaintiff that he did not have to answer any of the police officers' questions. Plaintiff recognized this right, but indicated that he was going to volunteer the information anyway. (Hoffman Aff, ¶ 4.) The officers asked Plaintiff to tell his version of the events. He declined to answer any questions, complained that the police could not "prove it," and stated to the officers that he "doesn't give people warnings" but, if he intends to do something, he just does it. (Hoffman Aff., 4.)

---

[2] Defendant Jacquilla Bass, the Department of Development Human Resources Officer, was out of the office the day of these events. (Hoffman Aff., ¶ 3.)

After the interview, the officers advised Hoffman they had concerns about Plaintiff and recommended that Plaintiff be removed from the workplace. (*Id.* at ¶ 5.) Hoffman again called Director Barbash and together they consulted with Jan Campbell, the Labor Relations Manager for the Columbus Department of Human Resources. As a result, Director Barbash determined that the best course of action was to place Plaintiff on administrative leave with pay pending an investigation into the situation. Hoffman informed Plaintiff of this decision.

Defendants instructed Plaintiff that, while he was on administrative leave, he should remain at his home during working hours and refrain from contacting City staff. Plaintiff alleges that he remained at his residence during working hours from August 15, 2002 until December 8, 2003.

On August 18, 2002, Plaintiff was arrested at his residence and charged with a misdemeanor of inducing panic as to the conversation on August 14. On February 14, 2003, Plaintiff was acquitted of the charge following a jury trial in the Franklin County Municipal Court.

On February 21, 2003, Defendants advised Plaintiff that he was guilty of violating City Work Rules #2 (rude, abusive or violent behavior), Rule # 6 (insubordination), Rule #7 (neglect of duty) and Rule #8 (failure of good behavior). Nonetheless, Plaintiff was thereafter allowed to return to work at the Department under different supervision. (Hoffman Aff., at ¶ 6.) Plaintiff did not lose any pay or benefits as a result of the administrative leave with pay. (Bass Aff., ¶ 3.) His employment was not terminated and he remained employed until his retirement on June 30, 2004. (*Id.* at ¶ 5.) Plaintiff contends, however, that he suffered damage to his reputation, his right to associate with others in his workplace, and humiliation from the publication of a poster associating him with criminal suspects and depicting him as a threat to the public's safety. He alleges that he was forced to take disability retirement on June 30, 2004 as a result of the stress.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence

of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

Here, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on his or its own Rule 56 motion does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party. *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)(citing *John v. State of La. (Bd. of Tr. for State Coll. & Univ.)*, 757 F.2d 698, 705 (5th Cir.1985)). The standard of review for cross motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248.

### III.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his First, Fourth, Fifth, Seventh and Fourteenth Amendment rights, as well as violations of the Constitution

of the State of Ohio and a state law claim for wrongful discharge in violation of public policy.[3] With the exception of his state law claim for wrongful discharge, Plaintiff asserts each of his claims pursuant 42 U.S.C. § 1983.

> Section 1983 provides in pertinent part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992); *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 971 (6th Cir. 2004).

### 1. City of Columbus

Plaintiff alleges that the City of Columbus is a "necessary indispensable party to this action because it employs Defendants Barbash, Hoffman and Bass." (Compl., ¶ 4.) Defendant, the City of Columbus, as a municipality, may be held liable under 42 U.S.C. § 1983 only when the municipality itself causes the alleged constitutional violation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). The doctrine of *respondeat superior* does not apply; a

---

[3] Plaintiff attempted to amend his Complaint ten months after the pleadings closed to assert a claim for constructive discharge. Because the amendment was untimely, and because Defendants clearly would have been prejudiced by the dilatory claim after they had already filed their Motion for Summary Judgment, the Court denied the amendment. (Doc. #34). Thus, Plaintiff does not have a claim for constructive discharge. (Doc. #34.)

governmental entity cannot be held liable under Section 1983 based solely upon allegations that an employee or agent inflicted an injury. *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The Sixth Circuit has held that "to satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the city itself and show that particular injury incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)).

Therefore, the City of Columbus cannot be held liable unless Plaintiff can prove that he suffered a constitutional deprivation and that such deprivation was caused by a policy, practice or custom of the City. The local government's policy or custom "must be the moving force of the constitutional violation in order to establish the liability of a governmental body under § 1983." *Polk County v. Dodson*, 454 U.S. 312 (1981) (quoting *Monell*, 436 U.S. at 694).

Here, Plaintiff has failed to identify any specific custom, policy or practice of the City of Columbus in connection with his claims that Defendants violated his federal constitutional rights. Indeed, the entire basis of Plaintiff's claim against the City of Columbus rests upon its position as an employer of the individual Defendants. Because *respondeat superior* does not apply, and Plaintiff has failed to adduce any evidence that a policy or practice of the City of Columbus was the moving force behind his alleged constitutional violations, Defendants' Motion for Summary Judgment is **GRANTED** as to the City of Columbus.[4]

---

[4] Any claims against the individual Defendants in their official capacities are equivalent to claims directed against the public entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Accordingly, the claims against the Defendants in their official capacities are likewise dismissed.

### 2. Fourth Fifth and Seventh Amendment

In paragraph 36 of his Complaint, Plaintiff makes reference to violations of the Fourth, Fifth and Seventh Amendments to the United States Constitution. Plaintiff has not addressed Defendants' arguments with respect to these claims, from which the Court concludes that he has abandoned them. Defendants' Motion is accordingly **GRANTED** as to these claims.

### 3. Ohio Constitution

Similarly, in paragraph 36 of his Complaint, Plaintiff references a claim brought pursuant to Section 1983 against Defendants for a violation of his rights established under the Ohio Constitution. Section 1983 creates a civil action against any person who subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A claimed violation of a state constitutional right is not cognizable under 42 U.S.C. § 1983. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313-14 (6th Cir. 2005). Plaintiff again does not contest this proposition of law. Defendants' Motion is therefore **GRANTED** with respect to Plaintiff's claim for a violation of the Ohio Constitution.

### 4. First Amendment

Plaintiff also does not address his claim under Section 1983 for a First Amendment violation, from which the Court could conclude he has abandoned this theory for recovery. The Court notes, however, that there is no merit to Plaintiff's claim that Defendants violated his First Amendment rights.

Plaintiff asserts that Defendants retaliated against him in the context of his employment relationship for exercising his First Amendment right of free speech and association. In order to

state a retaliation claim under the First Amendment, Plaintiff must show each of the following: (1) that he engaged in constitutionally protected speech; (2) he was subjected to adverse action or was deprived of some benefit; and (3) the protected speech was a "substantial" or a "motivating factor" in the adverse action. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001).

Other than a passing reference in his Complaint and Affidavit to the fact that he was "outspoken critic of Ms. Hoffman," Plaintiff identifies no speech which was purportedly protected. Moreover, public-employee plaintiffs are required to meet additional standards to establish that the speech at issue is constitutionally protected. First, a public-employee plaintiff must demonstrate that the speech involved matters of public interest or concern. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). Second, the claimant must show that this interest in addressing these matters of public concern outweighs the interest of his or her employer "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Township High Sch. Dist.* 205, 391 U.S. 563, 568 (1968). To determine whether speech addresses a matter of public concern, a court must consider the "content, form, and context" of the speech, as revealed by the whole record. *Rodgers v. Banks,* 344 F.3d 587, 596 (6th Cir. 2003)(quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). The Supreme Court has held that speech involves a matter of public concern when it relates to "any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146. By contrast, a public employee's speech dealing with "matters only of personal interest" is generally not afforded constitutional protection. *Rodgers*, 330 F.3d at 893 (quoting *Connick,* 461 U.S. at 147).

Here, Plaintiff indicates that he complained about Hoffman regarding her management style and poor attendance. (Compl., ¶ 12; Joseph Aff., ¶ 9-11). Plaintiff has not demonstrated or even addressed how this type of speech could constitute a matter of public concern, and the Court concludes that it does not. Plaintiff's expression of dissatisfaction with his supervisor's management style and attendance relate only the personal impact of those issues on him. He has pointed to no evidence of record to indicate that he was attempting to expose wrongdoing on the part of a government employee or the administration generally, and has not suggested that he was speaking on behalf of a group so as to convince this Court that his speech regarding Hoffman was constitutionally protected.[5] Defendants' Motion is accordingly **GRANTED** as to Plaintiff's First Amendment claim.

5. **Fourteen Amendment Due Process**

    a.) <u>**Statute of Limitations**</u>

Plaintiff alleges that "on or about January 9, 1997, and thereafter, Defendants denied Plaintiff his rights to reinstatement to his position of Development Land Use Specialist in which he had a constitutionally protected property interest." (Compl., ¶ 32.) As held in *Browning v. Pendleton*, 869 F.2d 989 (6th Cir.1989) (en banc), the statute of limitations for a Section 1983 claim is determined by state law, which, in this case, is two years. Plaintiff claims he was denied reinstatement in

---

[5] Again, Plaintiff did not address his First Amendment claim at all in his Motion or opposition to Defendants' Motion for Summary Judgment. Plaintiff has not argued that the statements he made to Makley concerning whose head he should "beat in first," or his musings regarding how long it would take to get a gun and "where to start" are constitutionally protected. Plaintiff does not dispute that he made these comments to Makley. Statements intended to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals are not protected speech. *Virginia v. Black*, 538 U.S. 343, 359-60 (2003); *see Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam).

January 1997; he filed his Complaint on August 16, 2004. Plaintiff's claim with respect to a denial of reinstatement in 1997 is clearly barred by the applicable statute of limitations.

Plaintiff also claims that he was deprived of property without due process of law in violation of the Fourteenth Amendment when he was placed on administrative leave with pay. Plaintiff was placed on administrative leave with pay on August 15, 2002. The statute of limitations begins to run when a plaintiff knows of his injury and its cause. *United States v. Kubrick*, 444 U.S. 111, 123, 100 (1979). Again, Plaintiff filed his Complaint on August 16, 2004, or two-years and one day after his alleged injury arose.

Plaintiff does not address the merits of Defendants' defense and does not contest Defendants' Motion for Summary Judgment as to their assertion that this claim also is also barred by the two-year statute of limitations. Defendants' Motion is accordingly **GRANTED** in this respect.

b.) **Deprivation of Property Interest**

Even if the claim was not time barred, Plaintiff's assertion that he was entitled to notice and a hearing before he was placed on paid administrative leave is without merit. In his Motion, which Plaintiff incorporates as his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff focuses almost exclusively on his claim that he had a protect property interest in his employment, and Defendants violated his due process rights by placing him on administrative leave without a pre-deprivation hearing.

Public employees who have a property right in continued employment cannot be deprived of that property interest by the government without due process of law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Here, however, it is undisputed that Plaintiff was placed on administrative leave and continued to receive his full salary and benefits. Plaintiff did not suffer a

deprivation of property and Defendants accordingly did not violate his due process rights. Indeed, employers may avoid due process concerns in cases in which immediate suspension of an employee is necessary by placing that employee on paid, rather than unpaid, leave. *See id.*, at 544-55 ("[I]n those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.")(footnote omitted); *see also Jerrytone v. Musto*, No. 04-4145, 2006 WL 162656 (3rd Cir. Jan. 23, 2006)(finding former public school teacher's due process rights were not violated when he was placed on paid suspension without a prior hearing after allegations of serious misconduct and criminal activity).

Plaintiff nonetheless argues that the collective bargaining agreement ("CBA") under which the terms of his employment were defined created a property interest in his particular position as a Development Land use Specialist and required a pre-deprivation hearing. First, Plaintiff has not adduced any evidence to support his argument, and has failed to produce a copy of CBA.[6] Second, even assuming Plaintiff had a property interest in his position, Defendants did not deprive him of it when they placed him on paid administrative leave.[7] Finally, Felton's assertion Plaintiff was never

---

[6] Plaintiff provides an affidavit from Carnell Felton, the former President of the Union, Communication Workers of America, Local 4502. In it, Felton states that "[c]ontrary to practice and the policy of the City's Collective Bargaining between the City and CWA Local 4502 Mr. Joseph never received the benefit of an investigation before his suspension from employment with the Department of Development." (Felton Aff., ¶ 6.) Felton does not acknowledge that Plaintiff was fully paid during the time he was on administrative leave. Moreover, there is no evidence that the CBA required a hearing prior to an employee being placed on administrative leave with pay. Finally, Plaintiff has not addressed how a provision in the CBA could support a Section 1983 claim.

[7] Plaintiff cites *Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000) for the proposition that he was entitled to a pre-suspension hearing even though he received full pay and benefits while on administrative leave. *Leary*, however, is inapposite. In *Leary*, the plaintiffs were school teachers who were involuntarily transferred to a different school. The court relied on specific language in the collective bargaining agreement between the teachers and the Board of Education which ensured that a teacher could not be transferred within the school district except on a showing of "good cause and extenuating circumstances." The court determined that this language was sufficient to create a property interest in a

provided a hearing while on administrative leave[8] is contradicted by Plaintiff's own affidavit.

According to Plaintiff, he was directed to report to a meeting approximately two weeks after his suspension began to answer questions concerning what had happened. Plaintiff appeared with his union representative, Richard Graham. Upon Graham's advice and the advice of his legal counsel, Plaintiff refused to answer any questions. (Joseph Aff., ¶ 43.) Plaintiff had notice, was confronted with the grounds for his suspension with pay, and was given the opportunity to respond. Plaintiff chose to stand silent, which he was privileged to do. The fact that Plaintiff chose to remain silent when he had an opportunity to address the allegations against him does not make the post-suspension hearing defective under the Fourteenth Amendment. *See Gniotek v. City of Philadelphia*, 808 F.2d 241, 245 (3rd Cir. 1986)(finding no due process violation where employees were given the choice of talking at a pre-termination hearing or invoking the Fifth Amendment privilege against self-incrimination). For these additional reasons, Defendants' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment claim is **GRANTED,** and Plaintiff's Motion is **DENIED.**

### 6. State Law Claim of Wrongful Discharge

Because Plaintiff's federal claims are disposed of by this Order, the Court declines to exercise supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's state law claim for wrongful discharge is **DISMISSED** without prejudice.

---

particular position within the school district. *Id* at 742. Plaintiff has produced no such evidence here. While Plaintiff may have had some expectation or desire to perform certain job duties, he had no constitutionally protected right to do so. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[8] Felton states that "Mr. Joseph was at no time provided with a hearing during the time he was suspended from employment or at the time he was returned to work." (Felton Aff., ¶ 10.)

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).[9]

### IV.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. # 17) is **GRANTED**; Plaintiff's Motion for Partial Summary Judgment (Doc. #19) is **DENIED**. Plaintiff's state law claim is **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

9-26-2006
**DATED**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[9] The Court is dismissing Plaintiff's claim for wrongful discharge in violation of public policy. Again, this Order does not relate to Plaintiff's putative claim for constructive discharge, which was the subject of the Court's previously denial of Plaintiff's Motion to Amend his Complaint.